UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BENJAMIN JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>Defendants. | Civil Action No. 22-cv-3764 (TSC) |

### MEMORANDUM OPINION

Plaintiff Benjamin Johnson sued several Metropolitan Police Department ("MPD") officers and the District of Columbia under 42 U.S.C. § 1983 and District law following a violent altercation with the police. Defendants moved for judgment on the pleadings, which the court granted in part and denied in part, holding that MPD Officer Dorghoud was not entitled to qualified immunity or qualified privilege because he used excessive force against Plaintiff and Officer Wilson was not entitled to qualified immunity as a bystander. Mem. Op., ECF No. 16; Order, ECF No. 17. Defendants moved for reconsideration. Having considered the record and the briefs, the court will DENY Defendants' motion.

### I. BACKGROUND

Plaintiff alleges that he was approached by two MPD officers in northwest D.C. on June 29, 2022. Compl., ECF No. 1 ¶ 1. One officer asked Plaintiff to turn around, and the other reached for his firearm. *Id.* Frightened, Plaintiff fled, and the officers gave chase. *Id.* ¶ 2. Plaintiff then noticed a third officer approaching from the opposite direction with a hand on his firearm, and he "immediately stopped running and raised both of his arms above his head." *Id.*

An officer then "threw him to the ground and jumped on his back," and "at least one" officer "placed his knee and elbow across [Plaintiff's] neck," causing injury, "excruciating pain," and shortness of breath. *Id.* ¶¶ 3–4. The other officers present chose "to stand around and watch" rather than intervene. *Id.* ¶ 5. Plaintiff was ultimately arrested, and once a higher-ranking officer arrived on the scene, they ordered Plaintiff be taken to the hospital. *Id.* ¶¶ 6, 27. After leaving the hospital, Plaintiff was taken to the jail and then released without being charged the next day. *Id.* ¶ 28. In response to this incident, Plaintiff sought mental health treatment. *Id.* ¶ 29.

Plaintiff subsequently filed this suit against the District and the officers involved in the altercation. *See id.* ¶¶ 14–19. His Complaint enumerates six claims, including excessive force, *id.* ¶¶ 40–64 (Count I); bystander liability, *id.* ¶¶ 65–70 (Count II); and common law assault and battery, *id.* ¶¶ 71–81 (Counts III and IV). Plaintiff seeks compensatory and punitive damages totaling $40 million. *Id.* Prayer for Relief. Defendants attached body-worn camera footage as exhibits to their Answer. *See* Notice of Filing, ECF No. 9 at 1. The court assumed without deciding that it could consider this footage in resolving Defendants' motion for judgment on the pleadings, Mem. Op. at 5, and will do so here as well.

The camera footage shows the altercation from the perspective of three of the officers on the scene: Exhibit A is Officer Dorghoud's footage, Exhibit B is Officer Wilson's footage, and Exhibit C is an unnamed officer's footage. *See* Defs.' Mot. for J. on the Pleadings, ECF No. 10 at 10–11 & n.1. The footage shows the police cruiser stopping in the middle of the road where Plaintiff was on his phone, Plaintiff fleeing as officers approached him, and the officers chasing him through the streets. Ex. A at 01:56–02:48; Ex. B. at 01:56–02:55. An unnamed officer was the first to reach Plaintiff, and already had him pinned to the ground when Officers Dorghoud

and Wilson arrived. *See id.*; Ex. C at 01:59–02:17 (unnamed officer approaches Plaintiff, who holds his hands up before diving to the ground). Officer Dorghoud and another officer then handcuffed Plaintiff while he was pinned face-down on the ground. Ex. A at 02:49–03:15; Ex. C at 02:23–02:31. Officer Wilson's footage clearly shows Officer Dorghoud's knee and elbow on Plaintiff's neck after he was handcuffed, Ex. B at 02:59–03:03, 03:12–03:21, and later shows Officer Dorghoud place his knee on Plaintiff's upper back, *id.* at 03:55–04:06. Throughout the interaction, officers told Plaintiff to "spit it out" and not "eat that." Ex. A at 02:49–03:52; Ex. B at 02:52–04:15; Ex. C at 02:33–02:35. At one point, Officer Wilson grabbed and held Plaintiff's hair while trying to convince him to "spit it out." Ex. B. at 03:37–03:59. Plaintiff eventually informed the officers that he swallowed "weed." Ex. A at 04:04–05:02. He told Officer Dorghoud, "you just fucking hit me in the fucking back for some weed," and Officer Dorghoud responded, "why the fuck did you run then?" *Id.* at 05:03–05:09. Plaintiff also exclaimed, "you punched me in the stomach—that's why I was out of breath," to which an officer responded, "maybe you shouldn't have fucking run then." *Id.* at 05:13–05:20. Finally, an officer told Plaintiff to stand up, and grabbed his arm to drag him to his feet. *Id.* at 05:35–05:45.

      The court granted Defendants' motion for judgment on the pleadings as to the claims it conceded, Mem. Op. at 4, but denied the motion as to all other claims. The court first held that Officer Dorghoud was not entitled to qualified immunity on the excessive force claim or qualified privilege on the assault or battery claims because he used force against Plaintiff once he was already subdued and presented no danger to the public or the officers. *Id.* at 9–12. It then concluded that Officer Wilson was not entitled to qualified immunity on the bystander liability claim because he could see Officer Dorghoud using force against the subdued Plaintiff and had a

reasonable opportunity to prevent the harm, yet chose not to act. *Id.* at 13–15. Defendants moved for reconsideration.

## II. LEGAL STANDARD

An order denying a motion for judgment on the pleadings is an interlocutory order. *Div. 689 v. Cap. Transit Co.*, 227 F.2d 19, 19 (D.C. Cir. 1955). Under the Federal Rules of Civil Procedure, a court may reconsider interlocutory orders "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities," Fed. R. Civ. P. 54(b), "as justice requires," *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (citation omitted). "In general," justice requires granting reconsideration "only when the movant demonstrates: (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order." *Murphy v. Exec. Off. for U.S. Att'ys*, 11 F. Supp. 3d 7, 8 (D.D.C. 2014) (formatting modified; citations omitted). "Ultimately, the moving party has the burden to demonstrate that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." *United States v. All Assets Held at Bank Julius, Baer & Co., Ltd.*, 315 F. Supp. 3d 90, 96 (D.D.C. 2018) (quotation omitted).

## III. ANALYSIS

Defendants contend that the force Officer Dorghoud used against Plaintiff was not excessive because the officers were attempting to recover evidence of a crime—the marijuana Plaintiff was attempting to swallow—and therefore both officers are entitled to qualified immunity and qualified privilege. Mot. for Reconsideration, ECF No. 18 at 4–9 ("Motion"). The court disagrees.

First, Defendants' motion rests on a faulty premise—that the marijuana Plaintiff was attempting to swallow was evidence of a crime. D.C. law provides that it "shall not be offense"

for any adult to "[p]ossess, use, purchase, or transport marijuana weighing 2 ounces or less." D.C. Code § 48-904.01(a)(1)(A); *accord Kornegay v. United States*, 236 A.2d 414 (D.C. 2020). Plaintiff's Complaint alleges that he is "an adult" and was released from custody "without charges." Compl. ¶¶ 7, 14, 28. Nothing in the record indicates that he attempted to swallow more than 2 ounces of marijuana. Indeed, the Answer provides that "Defendants lack sufficient information to knowledge to admit or deny" both of the Complaint's allegations. Answer, ECF No. 7 ¶¶ 7, 14, 28.

Second, the cases Defendants cite do not hold that attempting to destroy evidence of a crime justifies the use of force against a subdued suspect who presents no immediate danger to the officers or the public. Mot. at 6–7. Rather, those cases indicate only that swallowing evidence of a crime supports a conviction for tampering with evidence. *Timberlake v. United States*, 758 A.2d 978, 979–83 (D.C. 2000); *accord Commonwealth v. Morales*, 669 A.2d 1003, 1005–06 (Pa. 1996); *People v. Brake*, 783 N.E.2d 1084, 1086–87 (Ill. App. Ct. 2003); *State v. Jennings*, 666 So.2d 131, 133 (Fla. 1995); *State v. Forchin*, 684 So.2d 820, 820–21 (Fla. 1996).

Finally, even if the court's decision could have come out the other way, Defendants have not explained why reconsideration is warranted. For one thing, Defendants raised the argument that Plaintiff was attempting to destroy evidence of a crime for the first time in their motion for reconsideration, and failure to raise an available argument earlier is generally not grounds for reconsideration, even under Rule 54(b). *See, e.g.*, *Shapiro v. Dep't of Just.*, No. 12-cv-313, 2020 WL 5970640, at *5 n.2 (D.D.C. Oct. 8, 2020). For another, Defendants fail to explain how the court's decision amounted to "clear error." *See Murphy*, 11 F. Supp. 3d at 8.

## IV.  CONCLUSION

For the foregoing reasons, the court will DENY Defendants' Motion for Reconsideration, ECF No. 18.  An Order will accompany this Memorandum Opinion.

Date: October 10, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge